572 A.2d 607

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. KEVIN JACKSON, DEFENDANT–MOVANT.

Argued November 28, 1989—Decided April 18, 1990.

*Mark H. Friedman,* Assistant Deputy Public Defender, argued the cause for movant (*Alfred A. Slocum,* Public Defender, attorney).

*John Kennedy,* Deputy Attorney General, argued the cause for respondent (*Peter N. Perretti, Jr.,* Attorney General of New Jersey, attorney).

PER CURIAM.

This case is one of that series of death-row cases tried before our major defining decisions in *State v. Biegenwald,* 106 *N.J.* 13, 524 *A.*2d 130 (1987), *State v. Ramseur,* 106 *N.J.* 123, 524 *A.*2d 188 (1987), *State v. Bey (I),* 112 *N.J.* 45, 548 *A.*2d 846 (1988), *State v. Bey (II),* 112 *N.J.* 123, 548 *A.*2d 887 (1988), and *State v. Gerald,* 113 *N.J.* 40, 549 *A.*2d 792 (1988).

Specifically, this case was tried before our *Gerald* decision made clear that New Jersey's murder statute embraces two forms of common-law murder, one being intentional killings and the other unintentional killings that result from the infliction of "serious bodily injury." *N.J.S.A.* 2C:11–3(a)(1) and (2). In *Gerald, supra,* 113 *N.J.* at 69, 549 *A.*2d 792, the Court concluded that death was the authorized punishment only for intentional murder, not for serious-bodily-injury murder, otherwise the statute would offend constitutional principles.

In this case, defendant pled guilty to murder on September 19, 1986. The jury sentenced him to death. The question before us is simply this: Did he plead guilty to capital murder or did he plead guilty to non-capital murder? To answer the question we must first know more about the case and how the question comes before us. For this purpose, we shall accept as correct the State's statement of the case.

## I

On Labor Day, September 2, 1985, defendant brutally stabbed and murdered a female neighbor. That afternoon the victim had said to a visiting friend: "There's that creep again. He's always staring up here." After the victim's friend left, defendant entered her apartment and attacked her. She was found the next day, sprawled on the bed, with her night clothes pulled up over her head. A pillow covered her face. There was evidence of an attempted rape. Defendant stabbed the victim, in the words of the State, "wildly, viciously, repeatedly: 53 times." Defendant stabbed her eighteen times in the genital area with an obvious sadistic intent. After the murder, he stole her car and drove around casually with a man he happened to meet, drinking beer and looking for marijuana. Defendant was arrested two days later and confessed to the murder.

An Ocean County grand jury indicted the defendant on October 23, 1985, charging in the first count that he had "purposely or knowingly by his own conduct, cause[d] the death" of the victim, contrary to *N.J.S.A.* 2C:11–3a(1) and (2), and in further counts charging him with aggravated sexual assault and theft. On September 19, 1986, the defendant appeared before the Law Division and pled guilty to Counts One and Three, the murder and theft. A penalty-phase hearing was held before the Law Division and a jury between January 12 and February 6, 1987. The jury unanimously found that the aggravating factors existed beyond a reasonable doubt and outweighed beyond a reasonable doubt any existing mitigating factors. Defendant was sentenced to death. He filed a notice of appeal with this Court on April 27, 1988. On October 25, 1988, and while defendant's appeal was pending, this Court rendered its decision in *State v. Gerald, supra,* 113 *N.J.* 40, 549 *A.*2d 792. On July 31, 1989, defendant filed a motion seeking reversal of his conviction and sentence on the basis that the plea did not establish guilt to capital murder.

## II

The State responded to the motion on two bases: (1) that it is premature and unwise to decide the validity of the plea in the abstract without resolving all other possible issues in the case, and (2) that on the merits the motion fails because defendant's plea was plainly to capital murder and established death eligibility. Would that the latter were so plain. Although the indictment contained only the language of the first part of the statute, *i.e.*, that the defendant had knowingly or purposely caused the death of the victim, it charged the conduct to have been in violation of *N.J.S.A.* 2C:11–3a(1) and (2), embracing both capital and non-capital murder. Our present Rule of court, *Rule* 3:7–3, requires merely that a murder indictment

> specify whether the act is murder as defined by N.J.S.A. 2C:11–3(a)(1), (2) or (3) and whether the defendant is alleged to have committed the act by his own conduct and whether the defendant is alleged to have procured the commission of the offense by payment or promise of payment, of anything of pecuniary value. [*R.* 3:7–3(b)]

In making the following observations, we intend no criticism of court or counsel. Although *Ramseur* had foreshadowed the *Gerald* result by stating "intent to do only serious bodily harm * * * may * * * be insufficient to support a capital sentence today because of the constitutionally required culpability standards regarding a capital defendant's intent to kill," *State v. Ramseur, supra,* 106 *N.J.* at 194, 524 *A.*2d 188 (citing *Enmund v. Florida,* 458 *U.S.* 782, 102 *S.Ct.* 3368, 73 *L.Ed.*2d 1140 (1982)), *Ramseur* was decided on March 5, 1987, after this plea was entered. Moreover, the *Gerald* result was based not solely on federal, but on state, constitutional analysis. *Gerald, supra,* 113 *N.J.* at 75, 549 *A.*2d 792. With rare exceptions, court and counsel in capital cases did not forecast *Gerald's* differentiation between intentional murder and serious-bodily-injury murder. Hence, in explaining the charges to the defendant at the plea hearing the court asked:

> Q Mr. Jackson, do you understand that what you have said today, which basically has dealt with the stabbing of the victim, and knowing that would lead to her death, that that can be used against you later on in the penalty phase?

Do you understand that?

A   Yes.

In acknowledging to his own lawyer what he was pleading to, the defendant agreed with the following:

Q   And do you understand that the charge of murder entails or means that there was a killing, that the killing was caused by acts that you did, and that you understood while you were doing those acts that they would lead to a killing or cause serious bodily injury to the person that was involved?

A   Yes, I do.

\*   \*   \*   \*   \*   \*   \*   \*

Q   And when you stabbed [the victim] * * *, did you understand that you were injuring her and that those injuries could lead to her death?

A   Yes.

And, finally, in accepting the plea, the court said:

He admits that a killing took place, that he committed the killing, and that he inflicted wounds which he knew, in fact, would lead to serious bodily harm or death on the part of the victim, and that he knew what he was doing at that particular point in time.

## III

*Rule* 3:9–2 provides that a guilty plea is not valid unless the defendant understands the nature of the charges and the consequences of the plea. Recently we stressed that for a plea to be valid, "all material terms and relevant consequences [must] be clearly disclosed, fully understood, and knowingly and voluntarily accepted by the defendant." *State v. Warren,* 115 *N.J.* 433, 444, 558 *A.*2d 1312 (1989) (citations omitted).

Under *Rule* 3:9–2, a defendant in an ordinary criminal case can, and frequently does, supply the factual basis for a guilty plea. However, the rule creates an exception for capital defendants. *Rule* 3:9–2 states: "When the defendant is charged with a crime punishable by death, *no factual basis shall be required from the defendant* before entry of a plea of guilty to a capital offense or to a lesser included offense, provided the court is satisfied from the proofs presented that there is a factual basis for the plea." (Emphasis added).

The rule thus provides that a defendant can plead guilty to a capital crime without personally providing a basis of the underlying crime, although a sufficient factual basis is still a prerequisite to acceptance of the plea. The rationale for this singular exception is that a defendant exposed to the death penalty should not be required to state anything that can support an aggravating factor; he need not aid in rendering his own death sentence. *See* Commentary to 1982 Amendment, Trial Judges Committee on Capital Causes, *quoted in Pressler, Current N.J. Court Rules,* Comment *R.* 3:9–2 at 536 (1990).

Our decisions have reflected concern that this procedure can be implemented in capital cases when the most critical of all issues often is the mental state of the actor. *See State v. Ramseur, supra,* 106 *N.J.* at 207–08, 524 *A.*2d 188 (critical factor determining death worthiness is mental state of defendant). In *State v. Davis,* 116 *N.J.* 341, 373, 561 *A.*2d 1082 (1989), we asked our Trial Judges Committee on Capital Causes to review this procedure.

Justice Handler has written separately to emphasize his own views on how such a procedure should be implemented. As he wrote in a separate opinion in *State v. Davis,*

[t]he defendant should thus be made cognizant of what the State must prove, and is prepared to prove, to establish the aggravating factor(s) alleged in the case, and must be given an adequate basis to consider and determine the likely outcome of the sentencing phase. *See [State v. Taylor,* 80 *N.J.* 353, 363, 403 *A.*2d 889 (1979).] Finally, because it is a guilty plea that automatically exposes the defendant to a sentencing trial, the court should also require the State to demonstrate the evidence available to prove aggravating factors. [116 *N.J.* at 389, 561 *A.*2d 1082 (Handler, J., dissenting in part and concurring in part).]

The Trial Judges Committee on Capital Causes recently released recommended changes to the procedures for taking pleas in capital cases. These recommendations can serve as an interim guide to trial courts and counsel until they are implemented, in whole or in part, by the Court.

In this case, the trial court, quite understandably, not having the benefit of our *Gerald* decision, did not explain to the defendant what the State had to prove. Nor did defendant at

any time during the plea proceedings acknowledge that he purposely or knowingly caused the victim's death. The result is that there is not an adequate factual basis for the intentional killing that is the predicate to death eligibility. All that was before the trial court was Jackson's testimony at the plea hearing. The trial court expressly stated that it had not read Jackson's confession. Although the State may have had police reports, medical examiner reports, or grand jury minutes, the plea hearing does not include such evidence. Therefore, the only question is whether the plea hearing provides a factual basis for a capital-murder plea. All that the trial court had were the ambiguous statements made by the defendant at the plea hearing, none of which was sufficient to establish the state of mind necessary for capital murder under *State v. Gerald.*

In *Henderson v. Morgan,* 426 *U.S.* 637, 96 *S.Ct.* 2253, 49 *L.Ed.*2d 108 (1976), the Supreme Court held that a defendant pleading guilty to second-degree murder must be aware that intention to kill is an element of the crime. There the State argued that repeated stabbing of the victim established the requisite intent to kill, but the Court held that a jury might have concluded otherwise. Justice White noted in concurrence that the matter might be different if the record established that the defendant's lawyer had informed him of the elements of the offense, including the intent to kill. *Id.* at 648 n. 1, 96 *S.Ct.* at 2259 n. 1, 49 *L.Ed.*2d at 116 n. 1. Although Jackson stated that his attorney had informed him of the elements of the offense, there is nothing in this record to indicate that his attorney actually advised the defendant that conviction of capital murder would require that he have had not only the intention voluntarily to inflict the wounds on the victim, but also the intention that the victim die from the wounds, rather than informing him of the elements of the offense of statutory murder as they may have been perceived prior to the *Gerald* opinion.

This case is not like *State v. Pitts,* 116 *N.J.* 580, 562 *A.*2d 1320 (1989), in which an enraged Vietnam veteran, trained to kill, employed a combat knife to mutilate a female companion.

In that case, because counsel's sole defense was that a rage-reaction killing justified a conviction of something less than murder, we concluded beyond a reasonable doubt that defendant was not prejudiced by the failure to submit the two forms of murder to the jury. *Id.* at 614–20, 562 *A.*2d 1320. Nor is this a case like *State v. DiFrisco,* 118 *N.J.* 253, 571 *A.*2d 914 (1990), in which an execution-style killer plainly stated that he shot the victim four times in the head, with the intention to kill, to accommodate a gangland member. There, at trial "[defendant] was specifically asked, 'And was it your intention to kill him at that time?' And his answer was 'Yes.'" *Id.* at 259, 571 *A.*2d 914.

Even when one considers defendant's confession, which was admitted in the penalty phase but not in the plea proceedings, it is not an ineluctable admission of intent only to kill. The confession suggests that this killing was a sexual retaliation turned grotesque. *See State v. Davis, supra,* 116 *N.J.* at 366–75, 561 *A.*2d 1082 (death eligibility not established where defendant did not admit an intent to kill and plea record was insufficient to show intent). The State disputes defendant's claim of a relationship between him and the victim and asserts that defendant entered the apartment by stealth intending to attack her. Defendant's confession, however, stated that he did not enter the apartment of the victim intending to attack or to kill. He stated that on the night of the crime he reacted to a threat by the victim.

Nor does the violence of the attack establish the intent required. This case involves a multiple stabbing. Not every stabbing wound is intended to kill. *See State v. Hunt,* 115 *N.J.* 330, 374–77, 558 *A.*2d 1259 (1989) (jury must resolve question whether stabbings intended to kill or intended, rather, to inflict pain and suffering on the victim).

In sum, this pre-*Ramseur/Gerald* plea established a violation of *N.J.S.A.* 2C:11–3. That statute covers two forms of murder. Only one is capital. The plea does not establish which it was.

This may be contrasted on its face with a case like *State v. Savage, appeal pending* (No. A–30–88), in which the trial court plainly put to the jury the choice of the two forms of murder.

This ruling may strike some as hyper-technical. After all, there is no danger here that we are about to execute an innocent man. Defendant has never denied that he murdered the victim. The question, however, is not whether defendant is in any sense "innocent," but whether, under our law, he deserves the death penalty. His appeal is that the sentence to death be administered in accordance with law.

We can only repeat what we said in *State v. Biegenwald, supra,* 106 *N.J.* at 66–67, 524 *A.*2d 130, that we believe that the Legislature intended the capital-punishment law to be administered uniformly. We cannot conscientiously or constitutionally apply our principles of decision to Gerald and Davis but not to this defendant. We agree that the public has a right to have its capital-punishment law administered with all due diligence. We are mindful that in response to our efforts to expedite appeals on capital causes both the Public Defender and the Attorney General assert that they lack the financial resources to proceed more quickly. However, we believe that the public interest, including the need for expedition, is better served in this case by the disposition of this threshold issue on the motion for leave to appeal. The issue of this plea is better resolved sooner than later. If we wait months for briefs on all the possible issues in this appeal and conclude in the last analysis that the plea is inadequate, society will be further disserved.

Proceeding anew will require no victim to relive her horror. The other issues that may be presented in the appeal have undoubtedly been dealt with in other capital appeals. If the capital-punishment law is to work, it must be administered with reasonable expedition.

We vacate the sentence of death and remand the matter to the Law Division for further proceedings in accordance with

this opinion. A retrial of the guilt phase will be required if the defendant does not plead to capital murder.

HANDLER, J., concurring.

This defendant was indicted on October 23, 1985. The first count charged that he had "purposely or knowingly by his own conduct, cause[d] the death" of the victim, contrary to *N.J.S.A.* 2C:11–3a(1) or (2); further counts charged him with aggravated sexual assault and theft. On September 19, 1986, he pled guilty to the counts charging murder and theft. A jury trial to determine the penalty was held four months later. The jury unanimously found that aggravating factors existed beyond a reasonable doubt and outweighed beyond a reasonable doubt any existing mitigating factors. Defendant was sentenced to death.

Defendant took this appeal in April, 1988. In July, 1989, he filed a motion seeking reversal of his conviction and sentence on the ground that the plea did not establish guilt to capital murder. In the interim this Court decided the case of *State v. Gerald,* 113 *N.J.* 40, 549 *A.*2d 792 (1988). This decision was, obviously, not available to the defendant, the prosecutor or the trial court at the time defendant offered his guilty plea, nor did they foresee the *Gerald* holding. As a consequence, the plea was not structured to conform to *Gerald*'s requirements, and, as the Court now finds, the plea lacks the requisite factual basis for death eligibility under *Gerald*—an intentional killing. The Court observes that "[a]ll that the trial court had were the ambiguous statements made by the defendant at the plea hearing, none of which was sufficient to establish the state of mind necessary for capital murder under *State v. Gerald.*" *Ante* at 490, 572 *A.*2d at 610.

I substantially agree with the Court's reasoning and conclusion with respect to the narrow but important point it addresses. The factual basis for the plea in this as in most plea cases emerges in the form of defendant's testimony. We have insist-

ed that the underlying facts disclosed to support the plea to capital murder establish beyond a reasonable doubt that the requisite mental state—the intent to kill—prompted the murder. *Ante* at 490, 572 *A.*2d at 610; *State v. Davis, supra,* 116 *N.J.* at 366–75, 561 *A.*2d 1082. This plea transcript fails to demonstrate this requisite mental state and, also, exhibits an interrelated deficiency. We have taken pains to explain that a defendant must be fully informed of the requirements that establish capital murder and expose the defendant to the death penalty, and of the penal consequences of that plea once accepted. *State v. Davis,* 116 *N.J.* 341, 367–68, 561 *A.*2d 1082 (1989); *State v. DiFrisco,* 118 *N.J.* 253, 285–287, 571 *A.*2d 914 (1990) (Handler, J., concurring in part and dissenting in part). This defendant was not correctly informed of the mental state necessary to make murder capital. These standards for accepting a guilty plea to capital murder must be exacting and scrupulously applied. *See e.g., State v. DiFrisco, supra,* 116 *N.J.* at 285, 571 *A.*2d 914 (Handler, J., concurring in part and dissenting in part). In light of the failure of the trial court to explain the necessity of the intent requirement for capital murder, defendant's responses are not only factually deficient but uninformed and unenlightened.

I agree, also, with the Court's rejection of defendant's confession as an added source of the factual basis for his guilty plea. The Court has acknowledged that the use of a defendant's confession in conjunction with a guilty plea must be carefully scrutinized. *See State v. DiFrisco, supra.* Here, the confession was not proffered when the plea was entered, and is substantively inadequate to establish the requisite mental state. *Ante* at 491, 572 *A.*2d at 611.

With these added observations, I am satisfied to concur in the opinion of the Court. The narrow issue posed by the motion for leave to appeal does not raise more fundamental grounds for determining the validity of defendant's conviction and sentence and, consequently, need not be addressed. *See State v. DiFris-*

*co, supra,* 116 *N.J.* 253, 284, 571 *A.*2d 914 (Handler, J., concurring in part and dissenting in part).

*Concurring in result*—Justice HANDLER—1.

*For vacation and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, POLLOCK, O'HERN, GARIBALDI and STEIN—6.