576 A.2d 235
STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. TEDDY
ROSE, DEFENDANT–APPELLANT.

Argued May 7, 1990—Decided May 23, 1990.
Opinion Filed July 12, 1990.

*Patricia A. Kern* and *Carl J. Herman,* Designated Counsel, argued the cause for appellant (*Wilfredo Caraballo,* Public Defender, attorney). ·

*Hillary Brunell,* Assistant Prosecutor, argued the cause for respondent (*Herbert H. Tate, Jr.,* Essex County Prosecutor, attorney; *Gary J. Bogdanski,* Assistant Prosecutor, of counsel and on the briefs).

The opinion of the Court was delivered by

CLIFFORD, J.

Defendant, Teddy Rose, was convicted of knowing and purposeful murder and was sentenced to death. In *State v. Rose,* 112 *N.J.* 454, 548 *A.*2d 1058 (1988), we affirmed defendant's murder conviction but vacated his death sentence and remanded for a new penalty-phase hearing. On remand defendant moved before the trial court for a new trial on the guilt phase as well, on the basis of *State v. Gerald,* 113 *N.J.* 40, 549 *A.*2d 792 (1988). The trial court denied the motion. It also ruled against defendant on his proffer of testimony of three religious leaders and a sociologist regarding the morality, deterrent effect, and mechanics of the death penalty. After the Appellate Division

denied leave to appeal, we granted defendant's motion for leave to appeal the trial court's rulings, —— *N.J.* —— (1990), and summarily affirmed both orders. —— *N.J.* —— (1990). This opinion elucidates our affirmance.

I

Defendant argues that the original trial court's failure to have instructed the jury separately for the crimes of knowingly or purposely causing death (intentional murder) and of knowingly or purposely causing serious bodily injury resulting in death (serious-bodily-injury murder) requires reversal of his conviction. In *State v. Gerald, supra,* 113 *N.J.* at 69, 549 *A.*2d 792, we held that a person who is convicted of serious-bodily-injury murder under *N.J.S.A.* 2C:11–3(a)(1) or (2) may not be sentenced to death. If there is sufficient evidence that a defendant may have intended only serious bodily injury, not death, the trial court must charge the jury separately on the two crimes.

The record discloses that the victim, a police officer, approached defendant, who was standing on the street with a sawed-off shotgun concealed in a canvas bag, and asked him what was in the bag. Defendant "put his hand in the bag, raised it up, * * * held the bag to [the officer's] stomach and fired the shotgun." *State v. Rose, supra,* 112 *N.J.* at 470, 548 *A.*2d 1058. The blast from the shot knocked the officer "five or six feet into the street, flat on his back." *Ibid.*

In our first review of this case, we rejected defendant's contention that there was evidence "suggesting that the shooting was accidental and not intentional" and that therefore a charge on aggravated manslaughter should have been given. *Id.* at 482, 548 *A.*2d 1058. The issue now is whether a jury could have rationally concluded that in pressing a twelve-gauge sawed-off shotgun against the officer's stomach and pulling the trigger, defendant had either intended or known that his actions would only injure the officer, not kill him. To state the

question is virtually to answer it. As noted in our first opinion, there was uncontradicted evidence that to fire the weapon, one had to complete a two-step procedure: cock the hammer and, with four-and-a-quarter pounds of pressure, pull the trigger. *Id.* at 482, 548 *A.*2d 1058. We observed that "a person firing a sawed-off shotgun into the abdomen of another at point-blank range necessarily is aware that 'it is practically certain' that such conduct will cause the victim's death." *Id.* at 484, 548 *A.*2d 1058 (quoting *N.J.S.A.* 2C:2–2b(2)). Defendant was familiar with destructive power of the shotgun, having practiced firing at tires and plastic buckets. It is inconceivable that defendant was not "practically certain" that his action would kill the officer.

Defendant asserts that evidence adduced at trial could have led a jury to conclude otherwise: he was not carrying the shotgun on the fateful evening with the intent to use it against the victim; afterwards he was "crying and nervous"; and when questioned by the police, he expressed the hope that the officer would recover. None of those facts, however, is relevant to whether when defendant intentionally pulled the trigger of the shotgun, he was "practically certain" that the officer would die. *N.J.S.A.* 2C:2–2b(2). We find no evidence that could have led a rational jury to conclude that defendant did not know that his conduct would cause the victim's death. Defendant is not entitled to a new trial on the guilt phase of the case.

## II

The State moved to exclude at the penalty phase the proffered testimony of three clergymen regarding the religious propriety of the death penalty and of a sociologist regarding the deterrent effect of the death penalty. The trial court ruled that the testimony would be barred.

■ Evidence proffered by a defendant at the penalty phase must be "relevant to * * * [the] defendant's character or record, or to the circumstances of the offense." *State v.*

*Gerald, supra,* 113 *N.J.* at 103, 549 *A.*2d 792 (citing *N.J.S.A.* 2C:11–3c(5)(h)). ˙The morality and the general deterrent effect of the death penalty do not address any of those issues; by definition they do not speak to the specific defendant or crime. Such testimony is appropriate before a legislative committee, not a sentencing jury. "Balancing deterrence against countervailing considerations remains * * * primarily a legislative decision." *State v. Bey,* 112 *N.J.* 123, 147, 548 *A.*2d 887 (1988). The trial court's ruling was correct.

■ The trial court also properly barred the proffered testimony of the sociologist regarding the "humaneness" of execution by lethal injection. The manner of execution has no relevance to the character or record of a defendant or to the circumstances of the crime. Testimony on that subject would only divert "the jurors' attention from the facts of the case before them." *State v. Ramseur,* 106 *N.J.* 123, 322, 524 *A.*2d 188 (1987). The sociologist's testimony will be limited to particularized evidence of defendant's rehabilitative potential. *See State v. Davis,* 96 *N.J.* 611, 617, 477 *A.*2d 308 (1984).

### III

The Orders under review are:

Affirmed.

HANDLER, J., dissenting.

Defendant contends that "[a] retrial of the guilt phase on the basis of this Court's decision in *Gerald* is the only means [by which] defendant can avoid being subjected to a capital sentencing proceeding for a crime of which he has not yet been convicted—intent to kill murder [sic]." He argues further that a sentencing proceeding without a prior retrial of guilt "expose[s] to the death penalty a defendant who killed without intending to kill." The Court rejects these contentions.

In *State v. Gerald*, 113 *N.J.* 40, 91, 549 *A.*2d 792 (1988), the Court held that "when a defendant is convicted under *N.J.S.A.* 2C:11–3(a)(1) or (2) of purposely or knowingly causing serious bodily injury resulting in death, imposition of the death penalty is irrational and grossly disproportionate to the crime charged." The Court ordered a retrial of the guilt phase in that case because the jury charge had been ambiguous, failing to require the jury to distinguish in its verdict between knowing and purposeful murder and knowing and purposeful serious bodily injury. *Id.* at 92, 549 *A.*2d 792.

Since issuing the *Gerald* decision, this Court has applied its holding and principles in reversing several capital-murder convictions. See, *e.g., State v. Jackson*, 118 *N.J.* 484, 572 *A.*2d 607 (1990); *State v. Coyle*, 119 *N.J.* 194, 574 *A.*2d 951 (1990); *State v. Pennington*, 119 *N.J.* 547, 575 *A.*2d 816 (1990); *State v. Long*, 119 *N.J.* 439, 575 *A.*2d 435 (1990). The Court has also refused to reverse convictions under the *Gerald* standard where, in the Court's view, omission of a *Gerald* instruction was not capable of affecting the verdict. *State v. McDougald*, 120 *N.J.* 523, 577 *A.*2d 419 (1990); *State v. Pitts*, 116 *N.J.* 580, 620, 562 *A.*2d 1320 (1989); *State v. Hunt*, 115 *N.J.* 330, 376–77, 558 *A.*2d 1259 (1989). The Court today places the present case in the second category of post-*Gerald* cases.

On August 8, 1984, defendant shot an Irvington police officer with a sawed-off shotgun. The gun had been pointed toward the officer's stomach. The officer died a few hours later. After the shooting, defendant drove to his aunt's house and told her "that he had shot a police officer." He phoned another woman and "told her that he had shot Officer Garaffa." He and his aunt then drove to a state police barracks, where he told an officer "that he had shot a police officer in Irvington." Defendant gave a confession, and he "expressed the hope that Officer Garaffa would recover." He stated that he had shot the officer because he had " 'panicked, did not want to get caught.' " *State v. Rose*, 112 *N.J.* 454, 471–73, 548 *A.*2d 1058 (1988).

We stated most recently: "[I]f the record provides a rational basis for a jury to convict a defendant of either purposely or knowingly causing death, or purposely or knowingly causing serious bodily injury that results in death, a court must instruct the jury to specify which, if any, of those findings forms the basis for a conviction." *State v. Coyle, supra,* 119 *N.J.* at 209, 574 *A.*2d 951. The trial court's instructions in the defendant's guilt-phase trial did not require the jury to make such a distinction.

Defendant contends that the evidence in the case provides a rational basis for a jury finding that he had fired the shotgun to escape apprehension rather than to kill—"to disable, *i.e.*, to cause such bodily injury as would prevent apprehension rather than to cause the officer's death." Defendant also distinguishes his case from *State v. Pitts, supra,* claiming that in *Pitts* the defendant had armed himself and pursued his victims, with whom he had had previous involvement, inflicted multiple stab wounds to several parts of the body, and checked to make sure his victims were dead.

The Court now agrees with the State, which argues that in our prior decision in this case we stated that "in the absence of insanity or diminished capacity, a person firing a sawed-off shotgun into the abdomen of another at point-blank range necessarily is aware that 'it is practically certain' that such conduct will cause the victim's death. *N.J.S.A.* 2C:2–2b(2)." *State v. Rose, supra,* 112 *N.J.* at 484, 548 *A.*2d 1058 (1988). The Court today reiterates its reasoning:

> In our first review of this case, we rejected defendant's contention that there was evidence "suggesting that the shooting was accidental and not intentional" and that therefore a charge on aggravated manslaughter should have been given. [112 *N.J.*] at 482 [548 *A.*2d 1058]. The issue now is whether a jury could have rationally concluded that in pressing a twelve-gauge sawed-off shotgun against the officer's stomach and pulling the trigger, defendant had either intended or known that his actions would only injure the officer, not kill him. To state the question is virtually to answer it. As we observed in our first opinion, there was uncontradicted evidence that to fire the weapon, one had to complete a two-step procedure: cock the hammer and, with four-and-a-quarter pounds of pressure, pull the trigger. *Id.* at 482 [548 *A.*2d 1058]. We

observed that "a person firing a sawed-off shotgun into the abdomen of another at point-blank range necessarily is aware that 'it is practically certain' that such conduct will cause the victim's death." *Id.* at 484 [548 *A.*2d 1058] (quoting *N.J.S.A.* 2C:2–2b(2)). Defendant was aware of the destructive power of the shotgun, having practiced firing at tires and plastic buckets. It is inconceivable that defendant was not "practically certain" that his action would kill the officer. [*Ante* at 64, 576 *A.*2d at 236.]

The Court's reasoning is seriously flawed. The Court does apparently virtually answer the question by stating it. However, the Court states the wrong question. Its assertion that the legal issue is whether defendant "had either intended or known that his actions would only injure the officer, not kill him" misstates the issue. The law requires "practical certainty" on defendant's part. Moreover, it is overreaching argumentation for the Court to state, categorically, that it is "inconceivable that defendant was not 'practically certain' that his action would kill the officer." The question is inherently a fact-sensitive one. The Court's description of the "two-step procedure" seems accurate, but it is prosecution-like in its suggestion that the firing was calculated, deliberative, and premeditated. It should be the jury, not the Court, that reaches the ultimate conclusion based on all the facts, not simply the mechanics of firing the gun, that the death of the officer was alone intended by defendant.

The Court simply chooses to disregard evidence in support of defendant's position and uncritically applies its prior holding, which resolved a different issue, to solve this case. The Court ignores the facts that defendant stated he fled the scene in fear, that defendant told relatives and law-enforcement officers that he had "shot" the officer as opposed to having "killed" him, and that he expressed the hope, in talking to the police after the crime, that the officer would recover. It is ironic that in disregarding post-killing evidence in favor of defendant in this case, it reaches the same result that it achieves in the recent case of *State v. McDougald, supra,* 120 *N.J.* at 557–561, 577 *A.*2d at 436–438, by considering only post-killing evidence in favor of the State. In both cases, the Court concludes that

defendant is *not* entitled to a *Gerald* charge. Thus, the Court seems to pick and choose post-killing evidence depending on whether it will support a defendant's claim to a *Gerald* charge.

In addition, the Court acts as though it is bound by its prior holding. The evidence that both sides have summoned in support of their respective positions on whether there is a *Gerald* problem in this case is the *same* evidence that divided this Court, in its previous *Rose* decision, on whether the trial court should have issued an aggravated manslaughter charge. On the motion below, the trial court believed that the same reasons that prompted this Court to conclude that the evidence did not necessitate an aggravated manslaughter charge, see 112 *N.J.* at 479–85, 548 *A*.2d 1058, supports the conclusion that the evidence would also obviate a *Gerald* charge. The trial court thus observed:

> But frankly I looked at the charge. The Prosecutor has stated certain areas of the charge and, although as [defense counsel] pointed out the charge was given in accordance with the law at that time, the definition of murder included a purposeful intent to cause a serious bodily injury which resulted in death. But there are also portions of the charge that explicitly told the jury that the intention of Mr. Rose had to be to cause death or that he would be practically certain that even causing clearly bodily injury would result in death. So I frankly believe and I could stand corrected, but I believe the Supreme Court considered the issue in *Gerald* here and that they purposely didn't apply it to this case, because I don't think it was an appropriate situation. [Transcript of Motion Hearing, Dec. 21, 1989, 20–22.]

The Court's prior holding was that the trial court did not err in not charging aggravated manslaughter. It does not follow, however, that the failure to have made a serious-bodily-injury distinction is the functional equivalent to the failure to have made an aggravated-manslaughter distinction and was there-fore also not error. On the spectrum of homicidal mental states, intent to cause serious-bodily injury that results in death lies between the aggravated manslaughter intent ("recklessly," *i.e.*, consciously disregarding a substantial and unjustifiable risk that death will result from the conduct, *N.J.S.A.* 2C:2-2b(3)), and capital-murder intent ("knowingly," or "purposely," *i.e.*, with the conscious object of causing death, *N.J.S.A.* 2C:2-

2b(1)). The evidence that would move a homicide beyond the category of aggravated manslaughter toward the category of serious bodily injury that results in death may not be sufficient to carry it all the way to the category of capital-murder intent. Hence, it simply cannot be reasoned that evidence inconsistent with aggravated manslaughter is necessarily inconsistent with serious-bodily-injury murder and consistent exclusively with capital murder.

In concluding in its previous *Rose* decision that there was no error in the omission of an aggravated manslaughter charge, the Court rejected two arguments—that the shooting was accidental and that the supposed "panic" behind the shooting related to the question of volition. 112 *N.J.* at 482–85, 548 *A.*2d 1058. The rejection of those arguments does not resolve the question of whether there was a rational basis for a serious-bodily-injury instruction. The Court stated forcefully its view only that the evidence overwhelmingly established that the firing of the shotgun was "volitional" and "intentional and not accidental." *Id.* at 482–83, 548 *A.*2d 1058. That conclusion does not, however, address the question of volitional or intentional concerning what?—intentionally causing serious bodily injury resulting in death or intentionally causing death? The evidence on which the Court relied does not clearly resolve the question. The Court noted that

> [defendant's] use of the words "and this" as he fired the shotgun, his graphically candid statement to detective Czaplinski that "I just looked at him and just fired the gun," and the uncontradicted testimony of the ballistics expert concerning the pressure required to pull the trigger combine to demonstrate that whatever may have prompted defendant to fire the shotgun, the defendant's conduct in firing the weapon was intentional and not accidental. In the context of all the guilt-phase testimony, defendant's statement to Trooper Knight could not rationally be construed as an assertion that the shooting was accidental. [112 *N.J.* at 483, 548 *A.*2d 1058.]

The Court noted further that one of defendant's post-crime statements "reflected an acknowledgment of defendant's responsibility for the shooting without any explanation of how it occurred." *Ibid.* Although all of that evidence can be said to support the view that the shooting was clearly intentional, none

of it clearly identifies whether the intent was to cause serious bodily injury or to cause death. Furthermore, defendant's argument that a *Gerald* charge is required in this case does not depend on finding that panic was relevant in any way to his intent in firing the gun. Defendant may not have panicked, 112 *N.J.* at 485, 548 *A.*2d 1058 (the dissent's position "appears to accord undue significance to an isolated reference to 'panic' that appears once in the guilt-phase trial record"), and yet, the object of his intent nonetheless remains unclear from the record. The Court's previous conclusion, that "[d]efendant's statement that he 'panicked, did not want to get caught,' does not constitute a rational basis for a jury to conclude that defendant was merely reckless and thus unaware that firing the shotgun into Officer Garaffa's abdomen was 'practically certain' to cause his death," *id.* at 485, 548 *A.*2d 1058, does not dispose of the question.

The Court now concludes as a matter of law that "[i]t is inconceivable that defendant was not 'practically certain' that his action would kill the officer." *Ante* at 64, 576 *A.*2d at 236. I believe it is conceivable that he was uncertain that his action would kill the officer. More to the point, in light of all the evidence, there was a rational basis for submitting that issue to the jury.

Defendant contends that a new guilt phase is required in order to fulfill his constitutional right to a jury trial, citing the sixth and fourteenth amendments of the United States Constitution and the New Jersey Constitution of 1947 article I, paragraph 9. "Judicial review of the factual record," he claims, "is not sufficient." I agree that defendant is entitled to have a jury consider that claim. In a capital-murder prosecution, that question—the culpability of defendant's state of mind—is the critical jury question. A defendant cannot be accorded a proper, constitutionally-sound jury trial unless the jury, and only the jury, determines that vital issue. Furthermore, as a matter of fundamental fairness, a capital defendant is entitled to be fully, adequately, and accurately charged and notified of the crimes

against which he or she must construct a defense. In no context is the ability to prepare and defend a greater imperative than in the setting in which the defendant must fight for his or her life. There is no legal or policy basis for denying capital defendants the widest latitude and fullest opportunity to present evidence and formulate defenses, necessarily entailing a clear understanding of the distinction between knowing/purposeful murder and serious-bodily-injury murder. *See State v. Hightower*, 120 *N.J.* 378, 423, 577 *A.2d* 99 (1990) (Handler, J., concurring in part and dissenting in part); *State v. McDougald, supra*, 120 *N.J.* 523, 577 *A.2d* 419 (Handler, J., concurring in part and dissenting in part). The Court has conscientiously determined that a defendant may not suffer capital punishment unless he or she intended the death of the victim, but now it withholds the availability of the critical distinction—one of constitutional dimension—from a capital-murder defendant for no other reason than the timing of the *Gerald* decision. I cannot countenance such an unprincipled and contradictory holding.

For those reasons I dissent from the Court's decision not to order a retrial of guilt on intent-to-kill murder. I also note here my concurrence with the balance of the Court's opinion and thus withdraw part of my earlier recorded dissent from the Court's orders dated May 23, 1990.

Justice O'HERN joins in this opinion.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, POLLOCK, GARIBALDI, and STEIN—5, join in this opinion. Justice Handler has filed a separate dissenting opinion in which Justice O'Hern joins.

*Dissenting*—Justices HANDLER and O'HERN—2.