765 A.2d 735 (2001)
166 N.J. 319
STATE of New Jersey, In the Interest of T.M.
Supreme Court of New Jersey.
Argued November 8, 2000.
Decided February 6, 2001.
*736 Cecelia Urban, Assistant Deputy Public Defender, argued the cause for appellant T.M., (Ivelisse Torres, Public Defender, attorney).
Linda K. Danielson, Deputy Attorney General, argued the cause for respondent State of New Jersey, (John J. Farmer, Jr., Attorney General, attorney).
The opinion of the Court was delivered by LaVECCHIA, J.
On April 26, 1995, T.M., a mildly retarded juvenile, was adjudicated delinquent based on acts that, if committed by an adult, would constitute fourth-degree criminal sexual contact under N.J.S.A. 2C:14-3b. Three years later, he moved to vacate the guilty plea when he learned that he would have to register as a sex offender under New Jersey's Registration and Community Notification Laws, N.J.S.A. 2C:7-1 to -11 (generally referred to as Megan's Law). T.M. alleged that he did not enter his plea knowingly and voluntarily and that the plea lacked an adequate factual basis. The motion court upheld the plea, and the Appellate Division affirmed, finding that the delinquency hearing actually had proceeded as a trial on stipulated facts, not as a guilty plea. We granted certification, 163 N.J. 397, 749 A.2d 371 (2000), and now reverse.

I.
The facts of this case were uncontested. A delinquency complaint charged that, on April 18, 1993, T.M., then age twelve but functioning at the level of a nine-year-old, committed an act of criminal sexual contact *737 on T.H., a six-year-old girl. A delinquency proceeding was held on April 26, 1995, at which T.M., his mother, and counsel appeared. The prosecutor immediately informed the trial court as follows:
This matter was scheduled for trial, as the Court is well aware. [T.M.] was charged with criminal sexual contact under Docket 84-94. The particular statute was criminal sexual contact, N.J.S.A. 2C:14-3b, which as I'm reviewing the statute, is a fourth degree offense. The State is prepared at this time, in lieu of testimony, to place on the record the proffer that it would have made through its witnesses against [T.M.] in regard to this charge. And it's our understanding that the defense will not oppose that proffer and will accept that proffer as the factual basis for the charge. At which time ... the State would then recommend the disposition to the Court, which again, all parties have been involved in the discussion of that.
Although the State's witnesses were in court and available to testify, in lieu of testimony the State made its proffer of the "factual basis" for the crime for the record:
Your Honor, the complaint states that on or about April 18, 1993, [T.M.] of 18 Fourth Avenue, Pitman, New Jersey, age 12, did in fact take ... [T.H.], who was then six years old, into the shed on his property. Took her into the shed and locked the door and pulled down the shades. At that point, he removed her clothing, her bottom clothing, exposing her private area, or her vaginal area. He then kissed her area with his mouth, kissed that area with his mouth, and placed the palm of his hand on her vaginal area in a very hard pressing manner causing her discomfort. At or about that time, he did get off of her and she was able to leave the shed, and from here she told various persons, her grandmother, and Detective Kelly, and Mr. Osborn, of the events. And these testimonies would have been proffered through testimony had the State had an opportunity to put its case on.
Upon questioning by the court, the State indicated that T.H. had given that version of events, substantially contemporaneously with the incident, and that all persons named in the proffer were in court and ready to testify to the facts stated in the record.
T.M.'s counsel then made a statement expressing T.M.'s decision not to oppose the State's proffer of facts:
I've discussed this with my client, [T.M.], and with his mother. And we'veI've explained to him that the State was going to make its proffer and he has agreedwell, he's indicated he has no memory at this point of that day, which was approximately two years ago, but he has no opposition to the Court making a finding based upon the representation of the State.
Both defense counsel and the court questioned T.M. on the record, and the court also questioned T.M.'s mother regarding the decision not to oppose the State's proffer of facts. The court recited the State's proffer of facts, finding
[t]hat [T.M.] has taken the position today that he does not have any memory or any opposition to present the Court with regard to these facts. The Court will deem these facts to be true, to be unrebutted. Therefore, as a basisas a result of those statements as spread over the record, for which there is no opposition, the Court's determination that such conduct did in fact constitute criminal sexual contact under 2C:14-3b. That being a fourth degree offense. The Court will therefore enter an adjudication of guilty against [T.M.].
The court sentenced T.M. to one-year probation, ordered him placed under the care and supervision of the Department of Human Services so he could receive services from the Division of Developmental Disabilities, and prohibited him from having any contact with T.H. or her family when *738 she visited her great-grandmother in New Jersey.
Three years later, T.M. moved to vacate his guilty plea when his mother learned that he would be required to register as a sex offender under Megan's Law. T.M. maintained that the plea was entered without an adequate factual basis because the trial court never questioned him concerning his guilt of the criminal sexual contact offense underlying the delinquency charge. T.M. also argued that his plea was not voluntary or knowing, noting that the trial court did not make any inquiry concerning promises, inducements, or threats not disclosed by the record and that T.M. did not have an understanding of the nature of the charge and the consequences of the plea.
At the hearing, the motion court heard testimony from T.M.'s mother regarding T.M.'s decision to plead guilty in the delinquency proceeding. The mother testified that T.M. had repeatedly asserted his innocence to her, but that she thought it best for T.M. to plead guilty because she believed he would receive a lesser charge and avoid being placed in a detention center. T.M.'s mother also testified that she was not sure that T.M. had understood the nature of the delinquency proceeding, stating that T.M. "kept asking [her], `what do you mean, what do you mean,'" when she tried to explain the proceeding to him. The mother finally testified that T.M.'s retardation affected his comprehension.
The motion court denied T.M.'s motion to vacate the plea. The court found that T.M.'s "limited mental abilities" were relevant to the "voluntariness" of the plea and that T.M. "really did not provide a factual basis for the plea," but rather that the State had recited the evidence. Nonetheless, the motion court declined to substitute its judgment for the judgment of the trial court, which had the opportunity to observe T.M. and determine his ability to "know and understand the proceedings."
The Appellate Division affirmed. The panel acknowledged that the trial court presiding over the delinquency proceeding had not inquired of T.M. concerning his guilt of the criminal sexual offense or concerning his voluntary and knowing acquiescence to the proceeding. The panel observed, however, that the trial court made no such inquiries for a good reason: "This was not a guilty plea, but rather a trial on a set of uncontroverted facts." Implicit in that conclusion was a determination that the trial court need not have adhered to the provisions of Rule 3:9-2 that govern the entry of guilty pleas. The Appellate Division characterized the delinquency proceeding as "a trial on a set of uncontroverted facts":
T.M.'s position at the hearing was that he had no memory of the events of April 18, 1993. After hearing the factual proffer that was presented, with the witnesses present in court ready and willing to testify, [the trial court] was satisfied that the State established that the juvenile committed the acts underlying the complaint, and all of the elements of the criminal sexual contact were proven. The procedure that was followed was appropriate under the circumstances.
The Appellate Division held that the motion court properly denied T.M.'s motion to vacate, "no matter how it is characterized."
We disagree. We are compelled to conclude that this delinquency proceeding resulted in a guilty plea that lacked the procedural safeguards that should have attended it.

II.

A.
New Jersey's court Rules require that certain procedures accompany the taking of guilty pleas. Because a defendant pleading guilty waives important constitutional protections, the Rules are crafted to guarantee that the plea (1) has a sufficient factual basis, (2) is offered voluntarily, and (3) is given with a sufficient understanding of the nature of the charge and the consequences flowing from the *739 plea. State v. Barboza, 115 N.J. 415, 420-21, 558 A.2d 1303 (1989); State v. Taylor, 80 N.J. 353, 361-62, 403 A.2d 889 (1979). Those "touchstone" requirements, State v. Warren, 115 N.J. 433, 442-43, 558 A.2d 1312 (1989), have their historical roots in our case law, see, e.g., State v. Deutsch, 34 N.J. 190, 168 A.2d 12 (1961), but now are codified in Rule 3:9-2, which reads in relevant part:
A defendant may plead only guilty or not guilty to an offense. The court, in its discretion, may refuse to accept a plea of guilty and shall not accept such plea without first addressing the defendant personally and determining by inquiry of the defendant and others, in the court's discretion, that there is a factual basis for the plea and that the plea is made voluntarily, not as the result of any threats or of any promises or inducements not disclosed on the record, and with an understanding of the nature of the charge and the consequences of the plea.
The specificity and rigor embodied in Rule 3:9-2 manifest a systemic awareness that a defendant waives significant constitutional rights when pleading guilty, which places an affirmative obligation on a court to reject a plea of guilty when that court is not independently satisfied that the Rule's prerequisites are met. State v. Smullen, 118 N.J. 408, 415, 571 A.2d 1305 (1990).
Under Rule 3:9-2, a court taking a plea, except in a capital case, must satisfy itself through inquiry of the defendant and others, in its discretion, that an adequate factual basis exists for the plea. That rule applies to juvenile proceedings, so that a juvenile, just as an adult, must acknowledge or offer a factual basis for his or her guilty plea. In re J.R., 244 N.J.Super. 630, 632, 583 A.2d 376 (App.Div.1990); R. 5:21A (providing, as adopted effective September, 1998, for juvenile plea form and for juveniles guilty plea to accord with R. 3:9-2.
The requirement that a court elicit a factual basis for a plea serves a variety of purposes. The factual-basis requirement, among other things, protects a defendant who voluntarily and knowingly pleads, but without recognition that his or her conduct does not fall within the charge. It also provides a record for appellate review if the plea is later challenged and gives a court the opportunity to evaluate the conditions under which a plea is made. Barboza, supra, 115 N.J. at 421, 558 A.2d 1303. Because of the constitutional values at stake, "we have been very sensitive to the requirement that there be an adequate factual basis for a plea of criminal guilt." Smullen, supra, 118 N.J. at 414, 571 A.2d 1305. We have adopted the shorthand expression that the trial court "must be `satisfied from the lips of the defendant that he committed the acts which constitute the crime.'" Barboza, supra, 115 N.J. at 422, 558 A.2d 1303 (quoting State v. Stefanelli, 78 N.J. 418, 439, 396 A.2d 1105 (1979) (Schreiber, J., concurring)). That does not mean that a court must follow a prescribed or artificial ritual. To the contrary, because different criminal charges and different defendants require courts to act flexibly to achieve constitutional ends, a factual basis, established either through inquiry of others, which a defendant acknowledges, or through direct admission by the defendant, should be examined in light of all surrounding circumstances and in the context of an entire plea colloquy. Smullen, supra, 118 N.J. at 415, 571 A.2d 1305; Barboza, supra, 115 N.J. at 422, 558 A.2d 1303; see also In re J.R., supra, 244 N.J.Super. at 637-39, 583 A.2d 376.
Furthermore, a court may accept a guilty plea only when that court "is convinced that the defendant has entered into it knowingly and voluntarily and with an understanding of its consequences." Warren, supra, 115 N.J. at 447, 558 A.2d 1312; see also Taylor, supra, 80 N.J. at 353, 403 A.2d 889. A guilty plea that is not voluntary and knowing violates due process and thus is constitutionally defective. McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418, 425 (1969); Barboza, supra, 115 N.J. at 421 n. 1, 558 A.2d 1303.

*740 B.
The Appellate Division decision regarded the delinquency proceeding as a trial on uncontroverted facts. N.J.R.E. 101(a)(4) does provide that a fact may be established by binding admission or stipulation if there is no bona fide dispute between the parties concerning that fact. But whether that evidence rule permits an entire criminal trial or delinquency proceeding on a set of stipulated facts, unencumbered by the mandate of Rule 3:9-2, is another question altogether.
The concept of a trial on stipulated facts has been found useful in many jurisdictions, although the procedures that should attend them have been the focus of some debate. Various courts have considered whether the safeguards applicable to acceptance of a guilty plea are required when a defendant pleads not guilty and then proceeds to submit the case to the judge on the basis of a stipulation that is later claimed to have been the equivalent of a guilty plea. See Jay M. Zitter, Annotation, Guilty Plea Safeguards as Applicable to Stipulation Allegedly Amounting to Guilty Plea in State Criminal Trial, 17 A.L.R.4th 61 (1982 & 2000 Supp.).
Jurisdictions run the spectrum of views, from those holding that submission to a trial on stipulated facts never requires a court to employ the procedural safeguards attendant to a guilty plea, to those holding that procedural safeguards are required in every case tried on stipulated facts. Compare, e.g., State v. Johnson, 104 Wash.2d 338, 705 P.2d 773 (1985) (finding that stipulated facts trial not substantive correlative of guilty plea requiring that defendant be advised of constitutional rights) with, e.g., Bunnell v. Superior Ct. of Santa Clara County, 13 Cal.3d 592, 119 Cal.Rptr. 302, 531 P.2d 1086 (1975) (in bank) (finding guilty-plea safeguards applicable to stipulations for trials on transcripts in all cases). Occupying the middle of the spectrum are those states using a "tantamount-to-a-guilty-plea" test, which is a fact-specific rule that requires procedural safeguards for a stipulated facts trial if, under the circumstances of the case, it is the functional equivalent of a guilty plea. See, e.g., People v. Horton, 143 Ill.2d 11, 155 Ill.Dec. 807, 570 N.E.2d 320 (1991); In re John D., 479 A.2d 1173 (R.I.1984). Within this middle group, determinations vary concerning what exactly is "tantamount to a guilty plea" and when a defendant is adequately informed of that fact.
Although New Jersey's court Rules do not foreclose the possibility of trials on stipulated facts, the careful codification of principles in Rule 3:9-2 reflects a preference for heightened judicial supervision of any process in which a defendant concedes guilt and effectively waives such fundamental constitutional protections as right to jury trial, right to confront witnesses, and the right against self-incrimination. Even courts that have refused to equate a defendant's agreement to a trial on stipulated facts with a guilty plea, requiring adherence to the full measure of protections that attend a plea, nonetheless have determined that certain due process protections are required for a stipulation and resulting conviction to be valid. For example, in Adams v. Peterson, 968 F.2d 835 (9th Cir.1992), cert. denied, 507 U.S. 1019, 113 S.Ct. 1818, 123 L.Ed.2d 448 (1993), the Ninth Circuit Court of Appeals in reviewing a habeas petition concluded that the defendant's plea of not guilty in combination with a stipulated-facts trial was not the equivalent of a guilty plea. Nevertheless, the court held that due process required that the defendant voluntarily and knowingly agree to the stipulation itself and the process of court adjudication based on the stipulated facts. Id. at 843. Thus, the court conducted a searching review of the record and held that the defendant had made a considered and rational decision to pursue the stipulated trial process and that he knowingly and intelligently had agreed to the stipulated facts. The court stated that a "stipulation is valid and binding if the defendant understands the contents of the stipulation, the nature of *741 the stipulated-facts trial, and the likelihood of a guilty finding." Id. at 844. Because all of those requirements were met, the petition for habeas corpus was denied. Id. at 845; see also Commonwealth v. Lewis, 399 Mass. 761, 506 N.E.2d 891 (1987) (holding that whether pleading guilty or offering to submit case to court on facts proffered by prosecution, defendant was entitled to affirmative demonstration in record that his action was voluntary and intelligent in view of fundamental constitutional rights waived).
A stipulation of facts to which parties can agree efficiently narrows the areas of conflict to be resolved by a court. We believe that a trial of a criminal case substantially on the basis of stipulated facts may be a useful mechanism in appropriate cases, but that procedure must be reconciled with the provisions of Rule 3:9-2 and with protective due process considerations that ensure that use of the technique is voluntary and knowing. A trial on stipulated facts must not be permitted to become a means of circumventing the clear procedural prerequisites of guilty pleas contained in Rule 3:9-2. Accordingly, to the extent that we acknowledge the usefulness of trials on stipulated facts, we join those courts that have limited the use of such a process to situations in which there is an initial demonstration on the record that the defendant is engaging in the stipulated-facts trial voluntarily and knowingly.

III.
On this record, we are convinced that from the first comments of the prosecution, the essence of this delinquency proceeding was redolent of a guilty plea. The prosecution was prepared to make a proffer of the critical facts, it understood through communications with the defense that such a proffer would be unrebutted, and proposed that the State would recommend a disposition engendered by previous discussions with the defense. Although the words "guilty plea" were not uttered, the telltale elements were clearly in mind prior to the hearing and from the prosecutor's initial words.
The trial court proceeded solely on the basis of the facts the prosecutor proffered; no legal defense was made. The proffer became dispositive of defendant's guilt as the perfunctory process moved ahead, ineluctably and predictably, toward an adjudication of delinquency. Because the State's sentencing recommendation was pursuant to an agreement between the State and defense counsel and with the approval of the juvenile's mother, T.M.'s delinquency adjudication was a foregone conclusion. In its seminal decision on the nature of guilty pleas, the United States Supreme Court stated that a plea of guilty "is itself a conviction; nothing remains but to give judgment and determine punishment." Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711-12, 23 L.Ed.2d 274, 279 (1969). Similarly, T.M.'s delinquency proceeding moved efficiently from the prosecutor's unrebutted proffer to the quick culmination of delinquency, so that here too nothing remained but to give judgment and determine punishment.
Our independent conclusion that the proceeding retained the sum and substance of a guilty plea comports completely with the uniform assumption of all participants in the case. The trial court, T.M., the State, and the motion court all conceived of the challenged proceeding as constituting a guilty plea. That shared understanding survived until the Appellate Division panel characterized the proceeding as a trial on stipulated facts. Indeed, in the hearing before the motion court, the only contested issue concerned the procedural integrity of the guilty plea. The motion court's findings all related to whether the trial court satisfied the requisite procedural safeguards of a plea. In its arguments to the Appellate Division, the State continued to maintain that the procedural prerequisites of a guilty plea were satisfied, but never questioned the fundamental nature of the proceeding itself. *742 Further, the State argued that appellate review should be deferential because defendant had entered the plea pursuant to an agreement with the State. In short, the Appellate Division's revised characterization of the proceeding as a trial involving stipulated facts runs counter to the very grounds the State propounded for affirmance of the guilty plea.
That said, we add that this case may illustrate again the aphorism that hard cases make bad law. We understand why the delinquency proceeding took the shape it did. The case involved a child victim and a child accused, in the context of a juvenile delinquency proceeding, of an act of criminal sexual contact. We recognize that "child-sexual-assault cases are extremely difficult, both for the defendants and the victims. Courts taking pleas are undoubtedly conscious of the need to end the suffering." Smullen, supra, 118 N.J. at 418, 571 A.2d 1305. Exacerbating the difficulty of this case, the defendant was a juvenile suffering from mental retardation, and he could not recall the events of which he was accused. The State, the victim and her family, T.M. and his mother, and the trial court undoubtedly were attempting to expedite the proceeding and assure that justice was served. Given that view, it is understandable that the trial court might adopt an abbreviated adjudicative process.
But our review of the record reveals that neither the statements of defendant nor the larger context of the "plea colloquy" provided an adequate factual basis for the charged crime. During the hearing, the trial court asked defense counsel to question T.M. about the facts of the incident. The colloquy was as follows:
Defense counsel: [T.M.], do you remember what happened with the incident that we're involved in here today?
T.M.: No.
Defense counsel: We have discussed taking no opposition or not opposing the statement by the Prosecutor. We discussed that before we came into the courtroom. Correct?
T.M.: Yes.
Defense counsel: And that's what you wish to do?
T.M.: Yes.
Defense counsel: We're not opposing and you have no objection to the Judge making a conclusion, making a finding, based upon the statements by the Prosecutor? You're shaking your head, yes.
The court: [T.M.], you have to answer so that I can hear you.
T.M.: Yes.
The court then directly questioned T.M.:
The court: [T.M.], have you had a chance to talk with your mother this morning and have her answer any questions that you have?
T.M.: No.
The court: Have you talked with your mom this morning?
T.M.: Yeah.
The court: Did you talk about this case with your mom.
T.M.: I don't know.
The court: Did you talk with [defense counsel] this morning?
T.M.: Yes.
The court: And do you understand the position that you're taking? Do you understand that you're telling the Court that you don't remember anything, and based on what [the prosecutor] is telling the Court happened, that I can find that you committed those acts? Do you understand that?
T.M.: Yes.
The court also inquired of T.M.'s mother:
The court: And ... do you have any questions of the Court or anything you'd like to indicate to the Court this morning?
mother: No, Your Honor.
The court: Okay. And, ma'am, you've had the opportunity to speak with your son as well as speak with [defense *743 counsel] with regard to this matter. Is that correct?
mother: That is correct.
The court: Okay. And did you explain to your son what the various options were this morning.
mother: To the best of my ability.
The court: Okay. And [defense counsel] also explained them to him.
mother: Yes.
Notably, nowhere is there an admission or acknowledgment from T.M. that he had engaged in sexual contact with the victim. A factual basis for a plea "must obviously include defendant's admission of guilt of the crime or the acknowledgment of facts constituting the essential elements of the crime." State v. Sainz, 107 N.J. 283, 293, 526 A.2d 1015 (1987). The court's interrogation established only that T.M. and his mother had talked about the case between themselves and with defense counsel and that T.M. would accede to the prosecution's account and the court's foregone finding of delinquency. In its brief filed with this Court, the State concurs, stating that T.M. "never acknowledged his guilt or stipulated that the facts were sufficient for a finding of guilt...." Thus, the motion court, the Appellate Division, and the State all agree that the defendant did not provide the factual basis for his plea.
Moreover, the prosecutor's factual proffer, even if regarded as a summary of the factual basis for a plea, was insufficient in that an element of the offense of criminal sexual contact was missing. Under N.J.S.A. 2C:14-1d, "sexual contact" is defined as "an intentional touching by the victim or actor, either directly or through clothing, of the victim's or actor's intimate parts for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the actor." An element of the offense of criminal sexual contact, therefore, is that the offender commit the contact for the purpose of degrading the victim or for the offender's own personal sexual arousal or gratification. The factual basis for that element was entirely absent from the State's factual proffer.
At the motion hearing, the court noted the State's contention that State v. Smullen, supra, supports the proposition that a court may consider evidence available to a prosecutor as satisfying the requirements of a crime through inference. In oral argument, the State renewed its position that inferential satisfaction of the factual basis for a guilty plea is acceptable. Our decisional law countenances no such proposition, and in Smullen we reached no such conclusion.
Smullen is a useful counterpoint to the present case for two reasons. First, the trial court in Smullen properly elicited from the defendant the factual basis for the charge of criminal sexual contact. Second, the court satisfied itself that the factual foundation for all elements of the crime of sexual contact were revealed in the plea colloquy.
In response to the court's questioning in Smullen, the defendant stated that he had grabbed the child victim's intimate area and that the child was six years old. Smullen, supra, 118 N.J. at 412, 571 A.2d 1305. Applying the statute to the facts, the court then asked the defendant the reason he grabbed the girl. The defendant responded, "For my own pleasure." Ibid. To ensure that the factual basis for each element of the offense was satisfied, the court asked further, "What pleasure, sexual pleasure?" The defendant answered, "Yes." Ibid. The Appellate Division, although acknowledging that the defendant set forth the factual elements of the sexual-contact offense, discounted his testimony because the defendant's statement concerning sexual pleasure was elicited by a leading question from the court. This Court reversed, noting that the offense of criminal sexual contact "is not the kind of thing that people like to admit." Id. at 414-15, 571 A.2d 1305. Acknowledging a defendant's natural reluctance to elaborate on the details, the Court emphasized that a trial court has no choice *744 but to satisfy itself that defendant admit "the distasteful reality that makes the charged conduct criminal." Ibid. The Court held, therefore, that in the entire context of the plea colloquy defendant had provided an adequate factual basis for the crime.
Smullen does not support the proposition that a prosecutor's unrebutted factual allegations suffice to establish the requisite factual basis for a plea. Nor does that decision suggest that a trial court may infer a defendant's purposedegrading or humiliating the victim or sexually arousing or gratifying the victimizerfrom the act of sexual contact with a victim. In fact, the opposite conclusion is distilled from Smullen, where the court's leading question concerning the purpose of the contact was a necessary effort by a careful trial court to ensure that defendant establish a factual basis for each element of the offense. Without such an affirmative statement by a defendant pleading guilty to sexual contact, there is no basis for the court necessarily to infer sexual purpose or motive. See State v. Cusick, 219 N.J.Super. 452, 465-66, 530 A.2d 806 (App. Div.1987) (holding that when defendant does not concede sexual purpose necessary for crime of sexual contact, evidence of prior acts of sexual assault admissible to support "inference that defendant enjoyed or was stimulated by sexual acts with young girls and was therefore relevant to whether or not defendant was guilty of sexual contact").
The record here fails to reflect that T.M. acknowledged his guilt or stipulated that the facts were sufficient for a finding of guilt. Indeed, the facts stipulated were not adequate to support the element of sexual purpose necessary to the crime of sexual contact. Nor does the record reflect that he offered his plea of guilty voluntarily or with a sufficient understanding of the nature of the charge and the consequences of the plea. A plea is valid only when the court discloses all material terms and relevant consequences and makes certain that the defendant fully understands, and knowingly and voluntarily accepts, those consequences. State v. Jackson, 118 N.J. 484, 488, 572 A.2d 607 (1990). State v. Smullen again illustrates the type of process that should have occurred here. In that case, the trial court specifically questioned the defendant to determine, among other things, (1) whether anyone had forced, threatened, or put him under pressure to plead guilty, (2) whether the defendant understood that he was relinquishing certain constitutional rights, (3) whether the defendant understood the nature of the charge and content of the sentencing recommendation, and (4) whether the defendant was in fact guilty of the specific charge of criminal sexual contact. Smullen, supra, 118 N.J. at 411-12, 571 A.2d 1305.
The trial court propounded no such questions to T.M. Although it asked T.M. if he understood the position he was taking and if he understood that the court could make a finding on the State's proffer of facts, the court never specifically made sure that T.M. understood, and voluntarily and knowingly accepted, all material terms and consequences of his plea. Nor was T.M. advised of the rights he was waiving. An appellate court cannot presume a waiver of constitutional rights from a record silent on the matter. Boykin, 395 U.S. at 243, 89 S.Ct. at 1712, 23 L.Ed.2d at 279-80. The taking of a guilty plea "demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences." Id. at 243-44, 89 S.Ct. at 1712, 23 L.Ed.2d at 280.
The testimony of T.M.'s mother during the motion hearing exemplifies why those procedures are required. According to her, T.M. had repeatedly asserted his innocence, had great difficulty comprehending the significance of the delinquency proceeding, and finally succumbed to his mother's instruction to plead guilty in the interests of ostensibly getting a less-severe punishment and bringing finality to the *745 charges against him. T.M.'s uncertainty about the proceeding required stricter adherence to the constitutional process, not the abbreviated process that occurred.
There is also a practical benefit in creating a record that demonstrates adherence to the specified procedures. Such a record insulates the guilty-plea conviction from subsequent attack by a defendant seeking relief from its consequences. The State has an interest in finality, and that interest is furthered when convictions are made less vulnerable to later appellate challenge through assurance of the procedural integrity of the initial proceedings. One need look no further than this case to find an example of procedural imprecision impinging on the interest of finality.

IV.
We hold, therefore, that T.M. effectively entered a guilty plea, but that the procedural safeguards that must attend such a plea were not observed. Accordingly, we reverse the judgment of the Appellate Division and remand to the Family Part for proceedings not inconsistent with this opinion.
Finally, we refer to the Criminal Practice Committee the task of developing appropriate rule amendments to guide trial courts in developing a record that assures that a defendant's agreement to a trial on stipulated facts is voluntary and knowing. We also request the Criminal Practice Committee to consult and coordinate with the Family Practice Committee regarding the use of trials on stipulated facts in delinquency proceedings.
So ordered.
For reversal and remandmentChief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA and ZAZZALI7.
OpposedNone.