**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3919-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

CHARLIE HARRISON,

     Defendant-Appellant.

_____

Submitted November 17, 2021 – Decided December 13, 2021

Before Judges Hoffman and Whipple.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 13-01-0328.

Bonjean Law Group, PLLC, attorneys for appellant (Ashley Cohen and Jennifer Bonjean, on the briefs).

Cary Shill, Acting Atlantic County Prosecutor, attorney for respondent (John J. Santoliquido, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from the June 24, 2020 order denying his motion to vacate his guilty plea. We reverse and remand.

On November 14, 2012, defendant was arrested in Atlantic City, following a motor vehicle traffic stop. On January 29, 2013, a grand jury indicted defendant, charging him with one count of fourth-degree aggravated assault, one count of third-degree resisting arrest, one count of third-degree aggravated assault on a police officer, and one count of second-degree eluding police.

Officer Michael Oldroyd, the arresting Atlantic City police officer, testified before the grand jury that he noticed a black mini-van swerving several times, and that he decided to stop the vehicle and check the driver. Officer Oldroyd, while driving in a marked police vehicle, subsequently turned on his lights and sirens, but the mini-van continued driving for several blocks at approximately ten miles per hour. Officer Oldroyd testified that "[defendant] appeared not to notice me at all." Eventually, the vehicle stopped at Virginia and Pacific Avenues, where Officer Oldroyd ultimately arrested the defendant.

On April 30, 2013, defendant pled guilty to third-degree eluding; the remaining charges were dismissed. During his plea allocution, defendant provided the following testimony:

Q: All right. Sir, on November 14, 2012 were you in Atlantic City?

A: Yes, sir.

Q: Were you operating a motor vehicle?

A: Yes, sir.

Q: At some point during that operation did you get a signal or see a signal from a law enforcement officer to stop?

A: Yes, sir.

Q: And did you stop or avoid that?

A: No, sir.

Q: Kept going?

A: Yes, sir.

Q: Was the vehicle a marked car?

A: Yes, sir.

After pleading guilty, defendant was sentenced to two years of probation on the third-degree eluding charge. However, in defendant's pre-sentence report (PSR) completed on or around May 10, 2013, defendant stated, "I was driving. I saw flashing lights on a police car. I did not realize they wanted me to pull over." Furthermore, the PSR provided a case summary, stating that "[t]he driver of the black mini-van continued driving apparently oblivious to

3

the officer behind him."  In the PSR's case analysis section, the reporting probation officer wrote, "the defendant was driving a vehicle carelessly when an Atlantic City Police Officer attempted to pull him over.  The defendant failed to pull over, citing he was unaware the officer was attempting to pull his vehicle over."

After the court sentenced defendant, he filed a civil rights lawsuit in the United States District Court for the District of New Jersey against Officer Oldroyd, other Atlantic City police officers, and the City of Atlantic City.  He alleged he was the victim of excessive force and that on the night of his arrest, he was not aware that he was being pulled over by the police.  After five days of testimony, the case settled for $700,000.  Prior to trial, the City of Atlantic City disclosed a memo authored by Officer Oldroyd's supervising sergeant, Frank Timek; the memo was prepared subsequent to defendant's guilty plea, but never produced to defendant at any time during his criminal proceedings. Sergeant Timek was the on-scene supervisor on the night of defendant's arrest. He wrote:

> On 11/14/12, at approximately 0230hrs, I responded to the area of [Virginia] & Pacific Avenues for a K-9 apprehension of a suspect.  Once on scene, I spoke with arresting Officers Oldroyd, Clark and Seabrook. Based on the facts of this incident, I determined this had not been a pursuit as per our departmental policy

4

and/or the NJ Attorney General Guidelines and ordered the [officers] not to complete a pursuit report(s).

Sergeant Timek continued stating, "[d]espite whatever plea was offered/accepted by the Prosecutor[']s Office, there was no probable cause to charge the suspect with eluding arrest (N.J.S.A. 2C:29-2b) at the time of arrest as the driver clearly was unaware police had been attempting to pull him over." Furthermore, Sergeant Timek wrote, "this was not a motor vehicle pursuit; it was simply an attempt[ed] motor vehicle stop on an unaware suspected [driving while intoxicated] driver."

On May 17, 2019, Sergeant Timek testified in a deposition that "[he] determined it was not a pursuit because the suspect driver did not demonstrate awareness that he was being pulled over, and [Timek] felt that based on the fact that he had no awareness[,] it didn't meet the elements of an eluding statute[.]" Sergeant Timek further clarified that

> the elements of eluding, is knowingly, and in order for you to know that you're eluding somebody you would have to know that you were being pulled over. Clearly by his intoxication level and his actions and the direct observations of the officers, he was not aware that they were behind him, at least for the majority of the duration of the attempted stop.

A-3919-19

Following the civil litigation, defendant's attorneys met with the Atlantic County Prosecutor, Damon Tyner, to inform him of the newly discovered evidence obtained in the civil trial, which supported defendant's assertion that he was not guilty of the eluding charge and that the officers lacked probable cause to charge defendant with it in the first place. On January 3, 2020, defendant moved to withdraw his guilty plea, which the Atlantic County Prosecutor's Office did not oppose.

On June 24, 2020, the parties appeared via Zoom before the trial judge who denied defendant's motion and made the following ruling:

> All right. The matter[]s in front of me on Mr. Harrison's application to withdraw his plea, which was entered with regard to an eluding charge. He points to after acquired information, specifically a memo and deposition testimony of law enforcement with regard to the propriety of the charge and with regard to the necessary probable cause and as to whether Mr. Harrison knew or not that he was being pulled over by law enforcement. I've reviewed the transcript of the plea. I've reviewed the pleadings as well as the attachment and Mr. Harrison put forth a valid factual basis when he entered his plea. And Sergeant [Timek] after stated opinion with regard to the propriety of the charge and whether there was probable cause or not in my view doesn't change. So I'm denying the application.

Defendant appealed this ruling. On July 16, 2020, the court supplemented the June 24 ruling stating:

[D]efendant argues there is no factual basis for the plea. However, a fair reading of the plea colloquy indicates that defendant was operating a motor vehicle, was signaled to pull over, and did not. Defendant's argument that knowing disregard of the signal was not established, is contradicted by defendant's own words that he got a signal to pull over and did not.

Defendant also argues the Slater factors (State v. Slater, 198 N.J. 145 (2009)). First, defendant asserts a colorable claim of [i]nnocence. He points to the [Timek] deposition and memo. However, [Timek's] opinion, proffered some years after the incident, and the plea do not, in my view, give rise to a colorable claim of innocence. The case, as evidenced by the plea colloquy, is simple: Mr. Harrison was signaled to pull over and did not. The grand jury testimony does not contradict this. Although the officer indicated he "appeared" not to notice, this only evidences defendant's disregard of the officer's signal that he pull over.

The second Slater factor is the strength of the reason for withdrawal. Again, defendant asserts his innocence, which for the reasons indicated, I did not find persuasive. He also indicates that he did not realize he was pleading to a felony. He pleaded guilty to a [third-]degree eluding. . . .

Both the plea and sentence are old. The standard after sentencing is manifest injustice. There is none here. Mr. Harrison set forth a valid basis. The grand jury presentation was sufficient for an indictment. The long after recollected net opinions of [Timek] do not contradict this. Although counsel's certification protests Mr. Harrison's innocence, nothing on the record in this case supports a conclusion that he is innocent of the charge.

A-3919-19

On appeal, defendant raises the following arguments:

> POINT I
> The [Trial] Court Erred When It Denied Defendant's
> Motion to Withdraw His Guilty Plea After Concluding
> That Defendant Set Forth a Valid Factual Basis When
> Entering His Plea.
>
> POINT II
> The [Trial] Court Ignored Credible Evidence that the
> Defendant is Actually Innocent and the Slater Factors
> Weigh in Favor of Vacating His Plea.

Our review of a "trial court's denial of a motion to vacate a guilty plea for lack of an adequate basis is de novo." State v. Tate, 22 N.J. 393, 403-04 (2015) (citing Manalapan Realty, L.P. v. Twp. Comm., 14 N.J. 366, 378 (1995)). "An appellate court is in the same position as the trial court in assessing whether the factual admissions during a plea colloquy satisfy the essential elements of an offense." Id. at 404. If a factual basis to support the guilty plea has not been provided, the "analysis ends and the plea must be vacated." Ibid.

The New Jersey Supreme Court has instructed that

> when accepting a guilty plea, the trial court should
> inquire "among other things, (1) whether anyone had
> forced, threatened, or put [defendant] under pressure
> to plead guilty, (2) whether the defendant understood
> that he was relinquishing certain constitutional rights,
> (3) whether the defendant understood the nature of the
> charge and content of the sentencing recommendation,

and (4) whether the defendant was in fact guilty of the specific charge[.]"

[State v. Campfield, 213 N.J. 218, 230-31 (2013) (alterations in original) (quoting State ex rel. T.M., 166 N.J. 319, 336 (2001)).]

Thus, "our law requires that each element of the offense be addressed in the plea colloquy." Id. at 231. The trial judge "must be satisfied from the lips of the defendant that he committed the acts which constitute the crime." Ibid. (quoting State v. Sainz, 107 N.J. 283, 293 (1987)). However, the "factual foundation may take one of two forms; defendant may either explicitly admit guilt with respect to the elements or may 'acknowledge[ ] . . . facts constituting the essential elements of the crime.'" Ibid. (alterations in original) (quoting Sainz, 107 N.J. at 293).

Additionally, "[t]he trial court's inquiry need not follow a 'prescribed or artificial ritual[,]' [as] 'different criminal charges and different defendants require courts to act flexibly to achieve constitutional ends.'" Ibid. (quoting T.M., 166 N.J. at 327). In some cases, a "judge's leading questions may be necessary to ensure an adequate factual basis for the guilty plea." Ibid. A defendant's admissions "should be examined in light of all surrounding circumstances and in the context of an entire plea colloquy." Id. at 231-32 (quoting T.M., 166 N.J. at 327). Overall, the "trial court's task is to ensure that

9

the defendant has articulated a factual basis for each element of the offense to which he pleads guilty." Id. at 232.

Notably, we recognized in State v. Belton that

> an inadequate factual basis does not necessarily entitle a defendant to relief upon a collateral attack of a conviction. "As long as a guilty plea is knowing and voluntary . . . a court's failure to elicit a factual basis for the plea is not necessarily of constitutional dimension and thus does not render illegal a sentence imposed without such basis."
>
> [452 N.J. Super. 528, 540 (App. Div. 2017) (quoting State v. Mitchell, 126 N.J. 565, 577 (1992)).]

However, we also stated, "a contemporaneous claim of innocence alters the legal significance of the lack of factual basis[,]" ibid., and that a "factual basis is constitutionally required . . . when there are indicia, such as a contemporaneous claim of innocence, that the defendant does not understand enough about the nature of the law as it applies to the facts of the case to make a truly 'voluntary' decision on his own." Id. at 540-41 (quoting Mitchell, 126 N.J. at 577).

Moreover, as the Court in Campfield instructed, "[t]he remedy for an inadequate factual basis is an order vacating the guilty plea and restoring both parties to their positions prior to the trial court's acceptance of the plea." Campfield, 213 N.J. at 232. Consequently, "the plea, the judgment of

10

conviction, and the sentence must be vacated, the dismissed charges [must be] reinstated, and defendant [must be] allowed to re-plead or proceed to trial." Ibid. (quoting State v. Barboza, 115 N.J. 415, 420 (1989)).

Defendant contends that his guilty plea for eluding lacked a factual basis and that the trial court erred in denying his motion to withdraw the plea. We agree. Pursuant to N.J.S.A. 2C:29-2:

> Any person, while operating a motor vehicle on any street or highway in this State . . . who knowingly flees or attempts to elude any police or law enforcement officer after having received any signal from such officer to bring the vehicle . . . to a full stop commits a crime of the third degree[.]

For third-degree eluding, the requisite mens rea is "knowingly." Therefore, in order to establish a factual basis, the plea allocution must elicit from defendant an awareness that he knowingly fled or eluded the police. As defendant stated at the plea allocution, he saw a signal to stop from a law enforcement officer in a marked car, did not stop, and kept going.

The trial judge, however, failed to specifically question whether defendant, at the time of the incident, knew that he continued driving despite being signaled to pull over. The plea allocution could be reasonably interpreted as defendant's admission to "get[ting] a signal to stop[,]" not knowing at the time that the signal was for him, and thus continuing to drive.

11

Put another way, defendant's responses can be construed as an admission that he continued to drive, while not necessarily knowing that the police were attempting to pull him over. Unlike the plea colloquy in Campfield, where the defendant "acknowledged that his conduct was reckless," the plea colloquy here fails to prove that defendant knowingly eluded the police. 213 N.J. at 224. Instead, this leaves open the possibility that defendant was admitting to reckless or negligent behavior, but not necessarily to knowing behavior; without specifying that defendant's actions were knowing, the guilty plea lacks a factual basis. In addition, a factual basis can exist where defendant, in the absence of an explicit admission, acknowledges facts constituting the essential elements of the crime. Id. at 231. Here, however, that is not the case.

Defendant's plea allocution fails to establish an explicit admission that he knowingly eluded the police, and it likewise fails to establish that he implicitly acknowledged the essential elements of the crime. As stated, defendant's responses to the trial judge's questions could very well be construed as an admission to a recklessly or negligently eluding the police, while not being aware of it at the time. In sum, the plea allocution supports defendant's argument that his guilty plea lacked a factual basis.

12

Furthermore, defendant provided a contemporaneous claim of innocence in the PSR, where he stated, "I was driving.  I saw flashing lights on a police car.  I did not realize they wanted me to pull over."  As we expressed in Belton, where there is a lack of factual basis coupled with a contemporaneous claim of innocence, defendant is entitled to relief "upon a collateral attack of a conviction."  452 N.J. Super. at 540.

As the Court set forth in Campfield, the ordinary remedy under the circumstances requires vacating defendant's guilty plea and conviction, reinstating any dismissed claims by the State in accordance with the plea agreement, and restoring the State and defendant to their respective positions prior to the guilty plea.  213 N.J. at 232 (citing Barboza, 115 N.J. at 420).

Thus, because we conclude that defendant's guilty plea lacked a factual basis, we vacate defendant's guilty plea, reinstate his indictment, and remand the matter for further proceedings consistent with this opinion.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3919-19